### J. R. BEVIL ET AL. V. AUSBURY C. MOULTON ET AL.

#### Decided May 28, 1903.

**Community Property—Partition—Effect—Act of 1848.**

Proceedings of the probate court in the partition of a community estate between the surviving husband and the estate of his deceased wife, had under the Act of 1848 (Laws of 1848, p. 273), prior to the present law as to community administration, held to show that the partition so made was not a distribution of the half set apart to the estate of the wife among her heirs, but that such half was left subject to further administration.

Appeal from the District Court of Hardin. Tried below before Hon. L. B. Hightower.

*J. N. Votaw, Cruse & Nall,* and *Greer & Minor,* for appellants.

*D. W. Doom* and *D. H. Doom,* for appellees.

GARRETT, CHIEF JUSTICE.—This was an action of trespass to try title brought by the appellants against the appellees for the recovery of land situated in Hardin County. There was a trial to the court without a jury which resulted in a judgment in favor of the defendants in the suit.

The facts were undisputed, and the question for decision is whether or not, in a partition of the land in controversy as the community property of John and Frances Bevil, it was taken out of the estate of Frances Bevil, deceased, by the partition and set apart to her heirs, or was only a partition between the estate of Frances Bevil and her surviving husband, thus leaving it subject to further administration.

The trial court filed conclusions of fact which are referred to and adopted by this court, but the material facts may be briefly stated as follows: John Bevil and Frances Bevil were husband and wife in 1839, when the land in controversy was acquired. Frances Bevil died in 1852, and John Bevil was appointed administrator of her estate by the County Court of Jasper County in 1853, and returned an inventory and appraisement and proceeded with the administration thereof.

On the 29th day of September, 1856, John Bevil filed his amended application for partition, and contemporaneously therewith filed his bond of the same date with two sureties, conditional that the said John Bevil should well and truly pay or cause to be paid one-half of all community debts that may be established against said estate in amount not more than $1773.42, and that being one-half of the amount of the inventory and appraisement, which bond was on the same day approved by the chief justice. It was indorsed "bond for partition."

At the April term, 1856, of the court an order was entered in the estate of Frances Bevil, deceased, reciting that John Bevil, administrator of said estate, had filed his petition praying for partition and distribution of said estate among the heirs at law of the deceased, and directing that the notice required by law be given, citing all persons interested to appear at the next June term. Notice was issued and published citing the heirs and distributees of Frances Bevil, deceased, naming them. At the December term, 1856, an order was entered by the court in said estate, the proceeding being entitled partition and distribution, appointing commissioners "to make partition and distribution of the property belonging to the estate of the said Frances Bevil, deceased, by setting apart to John Bevil, surviving husband of said deceased, one-half part of the same and. the other half to (naming them), heirs at law of Frances Bevil, deceased, and that a writ of partition do issue to them commanding them forthwith to proceed to make such partition and distribution in conformity to this decree and to return their proceedings upon said writ to the present term of this court."

At the January term, 1857, and on the 26th day of January, 1857, the court made a decree of partition reciting and stating as follows:

"In the estate of Frances Bevil, deceased: And now comes the commissioners, George W. Smyth, M. Neyland and B. F. Mott, appointed to make partition and distribution of the estate of Frances Bevil, deceased, between John Bevil, surviving husband of deceased, and the heirs at law of the said Frances Bevil, deceased, and renders into open court this report of said partition and distribution, which said report was seen, considered, examined and approved by the court and ordered to be recorded." "To the Honorable Gideon J. Goode, Chief Justice of Jasper County: The undersigned commissioners appointed by your honor at the December term of your honor's court for probate business, 1856, to make a partition between the estate of Frances Bevil, dec'd, in community, and her husband, John Bevil, respectfully show that they have performed that duty so far as practicable under the circumstances by dividing a portion of the property into two shares as nearly as practicable, which are herewith presented marked No. 1 and No. 2. They further show that the said shares have been determined by lot as the law requires, share No. 1 was drawn for John Bevil, and that share No. 2 was drawn for the heirs of said deceased. The undersigned would further represent that there is a tract of land situated in Williamson

County, part of the headright of John (Jehu) Bevil, which they have been unable to divide for want of more definite information and other impediments. There is also a tract of land situated on Sabine Pass, in Jefferson County, John R. Bevil headright, which they have been unable to divide for the want of more definite information. They would also suggest that outlot No. 34, in Bevilport, is also found on the exhibit of property appertaining to the estate of S. H. Everett, deceased, and as such has heretofore been distributed in the partition of said Everett estate."

The report is signed and sworn to. Then follows the allotment attached to said report, share No. 1, set apart to John Bevil, including several tracts of land and town lots, among others the lower half of 3978 acres of land of Thomas Spear's headright, fronting on the river Neches and divided by line running east and west parallel to the lines of the survey, and share No. 2, set apart to the heirs of the deceased Frances Bevil, including several tracts of land and town lots, among others the upper half of 3978 acres of land of Thomas Spear's headright fronting on the Neches River and divided by a line running east and west parallel to the lines of the survey. And the decree then concludes as follows: "And it is further ordered, adjudged and decreed by the court, that the partition and distribution of the estate of Frances Bevil as made and reported to this court be and the same is declared to be firm and effectual forever, and that share No. 1 be and the same is hereby set apart to John Bevil, and that all right, title, and estate thereto fully vest in him, his heirs or assigns, and that share No. 2 be and the same is hereby set apart to the heirs of the said Frances Bevil, deceased, and that all the right, title, claim and estate thereto fully vests in them, the said heirs of the said Frances Bevil, deceased." The upper half of the said 3978 acres of land of the Thomas Spear's headright on the Neches River included in share No. 2 set apart to the estate of the heirs of Frances Bevil, deceased, is the land in controversy in this suit.

At the April term, 1859, the order for the partition of the land in Williamson and Jefferson counties was renewed, and on report of the commissioners that it was incapable of partition it was ordered sold, and was finally sold by the administrator and the sale confirmed. There was in evidence a certified copy from the minutes of the probate court of Jasper County, December term, 1856, of an account current and final settlement by John Bevil, administrator of the estate of Frances Bevil, as follows: "John Bevil, administrator of the estate of Frances Bevil, deceased, in account current and final settlement with said estate in partition and distribution in community with John Bevil and the heirs at law of the said Frances Bevil, deceased." Then followed a list of the lands belonging to the community estate, and a statement of their appraised value, including "3978 acres of land, part of the headright of Thomas Spear, on Pine Island Bayou, at $0.50, $1989.00." Also a list of notes due September 2, 1857, amounting in the aggregate to $510.45. The "account" appeared to be only a statement of the assets belonging

to the community estate. An original account or statement to the same effect was in evidence, except that it had the further item of amount transferred from R. W. Bevil's estate, $141.50. It was sworn to January 3, 1857, and was indorsed "Approved 3d day of January, 1857, G. J. Goode, C. J. J. C." It was also indorsed: "Ordered by the court that the above notes and assets remain in the hands of John Bevil, and when collected to be applied to the payment of the debts of the said estate, and the remainder, if any, to be equally divided between said John Bevil and the legal heirs of said Frances Bevil, deceased." John Bevil, as administrator of said estate, filed to the December term, 1858, "an account current for final settlement." It accounted for the notes belonging to the estate, but made no reference to the lands. Notice was ordered by the court to the next regular term.

John Bevil died in 1863. At the October term, 1866, of the court Friend M. Stewart was appointed administrator de bonis non of the estate of Frances Bevil, deceased, and duly qualified as such. The administration of the estate was afterwards transferred, in accordance with the change in the courts made by the Constitution of 1869, to the District Court of Jasper County, and that court, on November 23, 1872, on the application of the administrator, made an order for the sale of the land in controversy for the payment of debts and expenses of administration. The land was regularly sold and the sale thereof was confirmed and a deed therefor executed to M. C. Moulton by W. H. Bevil, administrator de bonis non, who had been appointed in the place of Stewart, who had died pending the proceedings for the sale. The plaintiffs have the title of M. C. Moulton.

When the application of John Bevil was filed in the County Court of Jasper County the law of 1856 had not been passed which provided for community administration by the survivor, and it was made under the Act of 1848, which made provision for the partition of the community property as well as the partition and distribution of the estate among the heirs at law. Section 102 of the act required the execution of a bond by the survivor in order to obtain a partition of the community property as such, and the partition was required to be made in the same manner, as far as applicable, as partition for distribution among the heirs. The application in this case showed that the land was community property of John Bevil and his deceased wife, Frances Bevil, whose estate was being administered by him. It gave the names of her heirs and asked that they be cited and for partition between him and them. The features of the proceeding which distinguished it from an ordinary application for partition and distribution of an estate among the heirs of the deceased was that it did not seek to have the share of the deceased divided among her heirs, but set apart to them in bulk, and a bond was filed in compliance with the requirement of the statute for the partition of the community property between the survivor and the estate of the deceased. All of the proceedings in the partition are consistent with the view that it was only a partition between the surviving husband and

the estate of his deceased wife. After the application had been filed, and on January 3, 1857, John Bevil filed a final exhibit entitled "John Bevil, administrator of the estate of Frances Bevil, deceased, in account current and final settlement with said estate in partition and distribution in community with John Bevil and the heirs at law of the said Frances Bevil, deceased." This exhibit showed sundry lands and notes on hand, including the Thomas Spear survey, and on the same day the court made an order that the above notes and assets remain in the hands of John Bevil, and when collected be applied in payment of the debts of said estate, and the remainder, if any, to be equally divided between John Bevil and the legal heirs of said Frances Bevil, deceased. This order was made pending partition, the decree for which was entered on January 26, 1857, and is consistent with and indicative of the fact that the share of the heirs was to remain subject to administration. After the partition little was done in the administration of the estate, and the two tracts of land that were found incapable of partition were not finally ordered sold until April 26, 1859. The war came on, and John Bevil died in 1863, and in 1866 the administration of the estate was reopened and the land treated as assets of the estate and finally sold as the property of the estate. There is nothing in the partition to indicate any purpose to take the property in controversy out of the assets of the estate and set it apart to the heirs of Frances Bevil except the expressions used in the orders of the court, "for the purpose of effecting a partition and distribution of said estate among the heirs at law of said deceased;" and the use of the expression "partition and distribution" in the application and the report of the commissioners.

It is contended that if it had been merely a partition between John Bevil and the estate of Frances Bevil, the decree would have vested title to share No. 1 in John Bevil in his own right, and title to share No. 2, the land in controversy, in John Bevil as administrator of the estate of Frances Bevil as required in such cases by section 102 of the law of 1848. But as the title to the community share of Frances Bevil at her death descended to and vested in her heirs, subject to administration, the decree simply declared the effect of the law without giving up its jurisdiction over the land as property of the estate; and although the statute provided that the share of the deceased should be turned over to the executor or administrator, the title was really in the heirs subject to administration, and the effect of the decree was that the administrator should retain control of the property until the close of the administration or the sale or partition thereof. The construction of the proceedings for the partition contended for by the defendants in the court below was evidently that of the probate court at the time of the partition, and in all of its subsequent proceedings ending in the sale of the land to the defendant's predecessor in title.

We are of opinion that the probate court retained jurisdiction of the land in controversy, and that the partition was such a partition as was contemplated by section 102 of the Act of 1848 between John Bevil

and his deceased wife, Frances Bevil, as of community property, and was not a distribution of the land to the heirs of Frances Bevil as of her estate.

The judgment of the court below will be affirmed.

*Affirmed.*

Writ of error refused.